Detoro, Appellant, *v.* Pittston et al.

Argued Nov. 29, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*R. B. Sheridan,* with him *J. Justin Blewitt* and *E. F. McGovern,* for appellant.

*Kenneth J. English,* with him *William H. Gillespie, W. L. Pace,* and *Francis M. Flanagan,* for appellees.

OPINION BY MR. JUSTICE DREW, January 2, 1945:

This is a mandamus proceeding brought by plaintiff, Albert Detoro, to compel Pittston, a city of the third class, to reinstate him as a policeman and reimburse him for wages lost through his dismissal from the force. It is the second trial of the case. In the first trial there was a directed verdict for plaintiff, which was affirmed by the court en banc and the Superior Court. An allocatur was allowed and this Court (344 Pa. 254, 25 A. 2d 299), reversed the judgment with a venire facias de novo on the ground that certain evidence offered by defendant was improperly excluded. The second trial, in which this evidence was received, resulted in a verdict for plaintiff. The court en banc awarded defendant judgment n. o. v. and plaintiff then took this appeal.

Plaintiff, a citizen of Pittston, on February 10, 1936, was certified by the civil service board of that municipality as eligible for appointment as a city policeman. He was appointed and served until April 19, 1938, when he was dismissed by the city council, without a hearing or presentation of any charges. Counsel for both parties agree that the discharge was invalid and void if plaintiff was properly appointed to the position. The only question here for answer is whether plaintiff's appointment was in compliance with the provisions of The Third Class City Law, Act of June 23, 1931, P. L. 932.

Section 4401 provides that no person shall be appointed to a position in the police department without having first passed all examinations provided for in the Act; Section 4404 requires the civil service board to adopt rules and regulations for determining the physical qualifications, habits, reputation, standing, experience and education of all applicants; and Section 4406, with which we are here most concerned provides: "Said boards shall make and keep, in numerical order, a list

containing the names of all applicants for civil service positions in said city who may pass the required mental and physical examinations. Where more than one person takes examinations for any of said positions at the same time, the names of all those successfully passing such examination shall be entered upon the list of eligible names in the order of their respective percentages, the highest coming first. The board shall furnish to council a certified copy of all lists so prepared and kept. Whenever any vacancy shall occur in any civil service position in said city, the city council shall make written application to the president of the proper board, who shall forthwith certify to the city council, in writing, *the four names* on the list of applicants for such position having the highest percentages. Thereupon the director of the department in which such appointment is to be made shall nominate to the city council *one of the four persons* whose names are submitted to fill such positions. If the city council approves such nomination, the person nominated shall be appointed to fill such vacancy, and shall be assigned for service in the department. If the council does not approve such nomination, then the director of the department in which such appointment is to be made shall submit another *nomination* for such position from the *remaining three names*, and if such nomination is not approved by council, he shall submit the third name; and if such nomination is not approved, he shall submit the fourth name. The person of the *four submitted* whose nomination by the director is approved by the city council shall be appointed to fill such a position . . ." (Italics added).

The civil service board of Pittston was appointed on the morning of February 10, 1936, and was organized at once. On the evening of the same day, the board conducted an examination of applicants for appointment to the police force. Nine applicants, including plaintiff, took the examination and all were certified as qualified. It is upon that certification that plaintiff bases his claim.

The certificate was as follows: "Pittston, Pa., February 10, 1936. To the Mayor & Council, of the City of Pittston; Pittston, Pennsylvania. Gentlemen: We hereby certify that Albert Orr, Robert Galavage, Albert Ditoro, Nicolas Sossong, Peter Munley, Joseph Delaney, George Daley, Herbert Connors, and Angelo De Santo, have been examined by us, and that they have passed the required mental and physical examination for the position of policeman. Yours respectfully, E. R. Myers, M.D. Peter Minichello Frank Early Civil Service Examining Board, Pittston, Pa." The city council acted on this certificate and appointed Orr, Galavage, Sossong, Detoro and Munley to the police force. The appointments became effective February 15, 1936.

There is a decided conflict in the evidence as to whether the civil service board adopted rules and regulations as required by The Third Class City Law, and if they did whether the board abided by them; also whether the applicants were properly graded on a percentage basis, and whether sufficient notice of the examination was given. Since there was evidence to this effect and the jury has resolved these questions in favor of plaintiff, we must assume that such statutory requirements were complied with.

However, even when this assumption is given full weight, we are still of the opinion that the learned court below did not err in entering judgment n. o. v. for defendant. The language of The Third Class City Law, supra, with which we have here to do, is clear and free from any ambiguity or doubt. The intention of the legislature is manifest. Certification of qualified persons must be made in lists of four, and from that list of four so submitted nominees must be presented to city council one at a time. This is the only way the applicants for appointment can be considered. In the instant case a list of nine was presented, upon which there was no indication who among those nine had the highest percentages. The list was presented en masse and the appoint-

ments were made by group, rather than individually. This was a clear and flagrant violation of the legislative mandate. Under such circumstances, no valid appointment could be made by council, for there was not a proper certification or listing of the applicants. In directing the appointee to be chosen from the four highest, it was obviously the legislative intent to give city council some discretion in its appointment. It is equally clear that the legislature intended to keep such appointments under the influence of merit achievement at the examinations, and thus secure the best qualified public servants. Any other construction would entirely defeat the purpose of the Civil Service law, and again place the filling of such places in the public service on a political patronage basis alone.

Plaintiff says that the board substantially complied with the statute, and for that reason his appointment was a valid one. In cases of this kind, substantial compliance is not sufficient. There must be strict compliance with the terms of the statute. In this connection, we said in *McCartney v. Johnston*, 326 Pa. 442, 446, 191 A. 121: "The fundamental purpose of the Civil Service Acts was to regulate and improve civil service in the cities of the Commonwealth . . . So that purpose may be realized, the statutory provisions regulating appointments call for strict compliance with the terms of the acts." Plaintiff also argues that, since he was dismissed without a hearing, this was a violation of his rights provided by the statute. But inasmuch as he was never validly appointed under The Third Class City Law he is not entitled to the protection of its provisions.

We have considered the other assignments and find them without merit.

Judgment affirmed; costs to be paid by appellant.